ALFRED A. DWIGHT AND WILLIAM M. DWIGHT v. THE
SCRANTON & WATSON LUMBER COMPANY AND
JAMES DEWEY. (IN RE PETITION OF CARLOS
E. WARNER.)

*Assignment for benefit of creditors—Subrogation.*

In this case it is held, in substance, that a stockholder in a corporation, who is shown by the articles of association to have paid in $50,000, being the amount of his *paid-up* stock, but for whom the corporation has paid out $40,000 under an agreement made at the time of its organization, cannot claim to be subrogated to the rights of a creditor of the corporation whose claims have been paid by the foreclosure of a mortgage given by such stockholder upon his private property for the benefit

of the corporation, as against the other creditors, who dealt with the corporation without knowledge of such private agreement, and upon the strength of the showing made by the articles of association; the corporation being insolvent, and having made an assignment for the benefit of its creditors, in which proceeding the stockholder seeks such subrogation.[1]

Appeal from Wayne. (Gartner, J.) Argued July 1, 1890. Decided October 31, 1890.

Petition by a stockholder of an insolvent corporation to be subrogated to the rights of a creditor whose claims have been satisfied by the foreclosure of a mortgage given by the petitioner for the benefit of the corporation. Decree granting prayer of petitioner reversed. The facts are stated in the opinion.

*Hoyt Post* (*W. H. Wells*, of counsel), for receiver and appellant, contended:

1. The subscriptions to the capital stock of a corporation constitute a trust fund for the payment of debts. The officers and managers of the corporation are trustees of the fund. They cannot squander it, or dispose of it to the prejudice of creditors, without an equivalent consideration; and the trust cannot be defeated by any simulated payment of the stock subscriptions, or by any device short of actual payment in good faith; citing *Wetherbee v. Baker*, 35 N. J. Eq. 512; *Sawyer v. Hoag*, 17 Wall. 610.

2. An agreement by which the stock is nominally paid for, and the money taken back as a loan to the stockholder, is a device to change the debt from a stock debt to a loan, and is not a valid payment as against creditors; citing *Sawyer v. Hoag*, 17 Wall. 610.

3. The courts have inflexibly enforced the rule that payment of stock subscriptions is good as against creditors only where payment has been made in money, or in what may fairly be considered as money's worth; citing *Wetherbee v. Baker*, 35 N. J. Eq. 513, and cases cited.

*Griffin, Warner & Hunt*, for petitioner, contended:

---

[1] See note to *Bush v. Wadsworth*, 60 Mich. 255, for a collection of Michigan cases, with statement of point decided.

1. It is contended upon behalf of the petitioner that the indebtedness in question was a primary indebtedness of the Scranton & Watson Lumber Co. In other words, that, as between the company upon the one part, and J. P. Scranton & Co. and Mixer upon the other part, either by the creating of the indebtedness as an original indebtedness upon the part of the corporation, and its indorsement by J. P. Scranton & Co., or by the assumption of the indebtedness of J. P. Scranton & Co. in consideration of the lumber and stock turned over to it upon the organization of the corporation, all the indebtedness at the time of the assignment existed as a primary liability upon the part of the corporation, and that, inasmuch as the indebtedness was in fact paid by the appropriation of the individual property of Mixer for that purpose, he (Mixer) became entitled to be subrogated to the rights of the bank as against the corporation respecting that indebtedness; citing *Smith v. Shelden*, 35 Mich. 42; *Bank v. Coumbe*, 47 Id. 358; *Smith v. Rumsey*, 33 Id. 183; *Myres v. Yaple*, 60 Id. 339; *Campau v. Miller*, 46 Id. 148; *Lucking v. Wesson*, 25 Id. 443; *Dunlap v. J. P. Donaldson Co.*, 74 Id. 290; 3 Pomeroy's Eq. Jur. § 1419, and notes.

MORSE, J. Carlos E. Warner files his petition in the circuit court for the county of Wayne, in chancery, in substance showing:

1. That at the time of the insolvency and assignment of the Scranton & Watson Lumber Company, the Merchants' & Manufacturers' National Bank of Detroit was a creditor of said company to the amount of $8,736.12, and that a claim for this amount was duly filed and proved in the office of the county clerk.

2. That the Scranton & Watson Lumber Company was organized as a corporation September 30, 1885, and succeeded to the business of J. P. Scranton & Co., and, in consideration of the transfer of the property of said last named company to the said corporation, the said corporation assumed and became obligated to pay the debts of said J. P. Scranton & Co., the said company then being solvent and composed of Harvey M. Mixer and James P. Scranton.

3. While Mixer was a member of the firm of J. P. Scranton & Co., in order to secure the said Merchants' & Manufacturers' National Bank for moneys advanced by said bank upon commercial paper to said J. P. Scranton & Co. he executed and delivered to said bank a mortgage upon certain real estate owned by him individually, and situated in Toledo, Ohio.

4. This real estate was pledged by him as his individual property for the said firm of J. P. Scranton & Co.

5. The petition sets out certain notes delivered by J. P. Scranton & Co. to the bank, and indorsed by said company, amounting to about $8,000. All these notes were either made or indorsed by the Scranton & Watson Lumber Company except two, and J. P. Scranton & Co. received a valuable consideration for them from the bank.

6. That no part of the notes had been paid the bank at the time of the assignment of the Scranton & Watson Lumber Company except $100 on a note of $350; that the mortgage given by Mixer upon his property in Toledo was foreclosed by the bank to pay these notes, and sold for a sufficient sum to pay the same, and depriving and divesting said Mixer of all right, title, and interest in or to said mortgaged property by such sale; that, as between the said Scranton & Watson Lumber Company and J. P. Scranton & Co., the former was the principal debtor upon these notes and the latter but security; that these notes were secured by the Mixer mortgage, and, the real estate being the individual property of Mixer, and sold to pay them, Mixer was entitled to be subrogated to the claim of the bank proven against the insolvent estate of the Scranton & Watson Lumber Company, and to be paid any dividend which might be declared upon said claim.

7. That Mixer was individually indebted to Benjamin Vernor in the sum of $1,000, and to secure such debt assigned to him a part interest in the aforesaid notes.

8. That the bank then assigned to Mixer its claim against the estate of the Scranton & Watson Lumber Company, and all its right, title, and interest in and to said notes, subject to said Vernor's interest.

9. Afterwards Mixer, being indebted to his wife in the sum of $4,000, assigned and set over to her his interest in said claim and notes.

10. Then Mrs. Mixer and Vernor assigned the same over to Warner to collect the claim or receive the dividend in trust for them.

Warner therefore prays that he may be subrogated to all the rights of the bank as against the Scranton & Watson Lumber Company, and that the receiver be ordered to recognize him and pay him all dividends that might or should have been payable to said Merchants' & Manufacturers' National Bank.

The receiver answered denying the right of Warner to be so subrogated, on the ground that the Scranton & Watson Lumber Company never assumed the debts of J.

P. Scranton & Co.; that J. P. Scranton & Co. were to contribute to the capital stock of said corporation the sum of $55,000; that they did contribute in lumber and other property about $54,000; but they were indebted to a large amount at the time, and, when the Scranton & Watson Lumber Company made an assignment, the corporation had advanced to J. P. Scranton & Co. to pay such indebtedness $41,931.09; that of this capital stock of $55,000, there was issued to Mixer $50,000 and to Scranton $5,000; that Mixer, at the time of the assignment, was largely indebted to the insolvent corporation, and in more than enough to cancel the claim of the bank to which he asks to be subrogated.

Proofs were taken upon the petition, and a decree entered by Judge Gartner, granting the prayer of the petitioner in that he be subrogated, and stand in the place of the bank, to the extent of the sum of $7,652.41.

Previous to October 5, 1885, Mixer and Scranton were in the lumber business in Detroit, under the firm name of J. P. Scranton & Co. They had on hand at that date some $54,000 worth of lumber, and also outstanding accounts. Their liabilities were undoubtedly less than their assets. Joseph E. Watson was also carrying on a lumber business at Detroit and at other places in Michigan. The Scranton & Watson Lumber Company was formed, and a corporation organized October 5, 1885, by putting the stock and other property of each business into one. The corporation was organized with an authorized capital of $150,000, $110,000 of which was called "paid in." This was done by turning the lumber of J. P. Scranton & Co. in at $55,000, and the lumber and other property of Watson in at the same amount. The stock was divided and issued as follows: Watson $50,000, Mixer $50,000, Scranton $10,000. It was agreed substantially, and was a part of the arrangement, that the debts of each

of the old concerns should be paid by the new company. The amount advanced for J. P. Scranton & Co. was to be made good by Mr. Mixer, and the amount to Watson by Watson.    The indebtedness of J. P. Scranton & Co. was supposed to be about $30,000, and of Watson about $20,000.    In fact it exceeded these amounts in both cases; how much it is not material to ascertain.    The new corporation ran about 10 months and then made an assignment.    Scranton and Mixer lay the blame of failure to Watson, who, they claim, kept drawing out and returning nothing of any account.    The new corporation is admitted to be insolvent.    It is not disputed that Mixer mortgaged his individual property to the bank for the benefit of J. P. Scranton & Co., and it is shown by the proofs that a portion of the notes which the bank proved against the insolvent estate were made by the Scranton & Watson Lumber Company, and that such corporation received the avails of the discounts of the same.    The balance of the notes were given by the corporation in renewal of the J. P. Scranton & Co. indebtedness.

It is claimed, however, by the receiver that the doctrine of subrogation is one of equitable origin, and that—

"It is only to prevent fraud and subserve justice that equity ingrafts the wholesome provisions of subrogation or of equitable lien upon a transaction, and it should never be done where it would work injustice." *Kelly v. Kelly,* 54 Mich. 47.

The position of the receiver is undoubtedly correct; and we do not think that, under the circumstances of this case, as against the other creditors, Mr. Mixer, or his assignees, Vernor and Mrs. Mixer, through their trustee, Mr. Warner, can claim or hold any equitable. right to be subrogated to, and stand in the place of, the bank.    It is true that the bank has been paid, and by the private property of Mr. Mixer; but the conduct of Mixer has

been such as to estop him from claiming the right of subrogation which might under other circumstances belong to him.

The capital stock of a corporation constitutes a trust fund for the benefit of its creditors for the payment of its debts. Mr. Mixer, by his own showing, was a party to a transaction in the organization of this corporation by which its articles, filed by law in a public place, showed a capital stock paid in of $110,000, of which Mr. Mixer had paid in $50,000. By agreeing at the same time to pay the debts of the two concerns whose property represented and made up the paid-in capital, of which agreement the public knew nothing, those dealing with the new corporation were deceived, and will be defrauded if the present decree stands. It appears from the evidence that the property which was called $110,000 paid-up capital was estimated and inventoried at, J. P. Scranton & Co., $54,211.81, and Watson, $45,771.31, a total of $99,983.12. Out of this there was drawn a large amount, —over $20,000 to pay the pre-existing indebtedness of Watson, and $41,931.09 to pay the debts of J. P. Scranton & Co., as shown by the books at the date of the assignment. Therefore, in reality Scranton and Mixer only paid in about $13,000 of capital, while the creditors, as shown by Mr. Déy, or at least a portion of them, supposed they had paid in $55,000. Since the assignment the amount shown to have been paid out on claims against J. P. Scranton & Co. has been increased over $3,000, leaving less than $10,000 contributed by Mixer and Scranton to the capital stock. This assumption of the debts of J. P. Scranton & Co. amounted to the same thing as if Mixer had paid in $50,000 in cash to the capital stock, and then drawn out $40,000 of the same to pay his individual debts.

It must be remembered that the record shows that Mixer

was the principal owner of the J. P. Scranton & Co. property, and was to make good what was paid out by the new corporation upon its debts. He put in the property, and gave $5,000 of the stock to Scranton. Watson gave Scranton the other $5,000. Scranton testifies that he took $5,000 for his interest in the J. P. Scranton & Co. business, "and quit" as far as that was concerned. If Mixer had withdrawn $40,000 in the case supposed to pay his private debts, equity would not have permitted him to prove a debt of his own against the corporation for $8,000, and obtain dividends upon it. Nor can he do so in the present case. He was obliged to pay the debts of J. P. Scranton & Co.; and so much of the debt to the bank (to pay which his property was sold) as was made up of renewals of the paper of J. P. Scranton & Co. was his to pay. The balance for which the corporation was liable, as it received the avails of the notes discounted, would make but a small offset to the amount that he has withdrawn from the corporation to pay his own debt. If the transaction had stood before the public as it really was, so that persons dealing with the corporation would have known that the paid-in capital was subject to the individual debts of the corporators, and with such knowledge had trusted the corporation, the claim of Mixer for subrogation would have been equitable. As it is, it would be manifestly unjust to allow him to be so subrogated and become a creditor of the corporation, while, in the light of the articles of association, he is a debtor.

The case of *Dunlap v. J. P. Donaldson Co.*, 74 Mich. 290, is not in point here. That was an action at law upon a note made to a member of the corporation by the corporation, and transferred to the plaintiff in that suit. It was held that, as the original payee of the note was not regarded by the corporation as a debtor when she

drew out money for family expenses, and as the suit was in common law form merely, and for the purpose of settling the creditor's claim against the corporate estate, the set-off could not be allowed. But this is a proceeding in equity, and he who seeks equity must do equity.

The decree of the court below is reversed, and the petition will be dismissed, with costs of both courts.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred. CAHILL, J., did not sit.